**PROSKAUER ROSE LLP**
Richard M. Goldstein (RG 8329)
Michael T. Mervis (MM 0306)
Baldassare Vinti (BV 0080)
Victoria L. Loughery (VL 0172)
Eleven Times Square
New York, NY 10036
Tel: 212.969.3000
Fax: 212.969.2900

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHURCH & DWIGHT CO., INC., <br><br> Plaintiff, <br><br> v. <br><br> SPD SWISS PRECISION DIAGNOSTICS, GMBH, <br><br> Defendant. | Civil Action No. 1:14-cv-00585-AJN |

## (Corrected) COMPLAINT

Plaintiff Church & Dwight Co., Inc. ("Church & Dwight"), by and through its attorneys, for its Complaint against defendant SPD Swiss Precision Diagnostics GmbH ("SPD"), alleges as follows:

### NATURE OF THE ACTION

1.     This is an action for false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125a, for related violations of state law and for breach of contract.

2.     Church & Dwight and SPD are competitors in the market for over-the-counter home pregnancy test kits. Beginning in approximately August 2013, SPD commenced a national advertising and marketing campaign which inundated consumers with false advertising concerning a new home pregnancy test kit sold as the "Clearblue Advanced Digital Pregnancy

Test with Weeks Estimator" (the "Weeks Estimator" or the "Product").  More specifically, from the inception of its campaign, and continuing through today, SPD has falsely advertised the Product as being capable of estimating how many weeks a woman has been pregnant, notwithstanding:  first, that the Product is not effective for that purpose; second, that SPD has expressly acknowledged that the Product should not be used for that purpose; and, third, that the U.S. Food and Drug Administration ("FDA"), which regulates home pregnancy tests, specifically directed that the Product not be marketed for that use.

3.      According to SPD, the Weeks Estimator can, by measuring the concentration of a hormone in urine, estimate the possible range of weeks that may have passed since a woman ovulated.  However, as the FDA emphasized in clearing the Product for sale, there is a material difference between an estimate of how many weeks may have passed since a woman last ovulated and an estimate of how many weeks a woman has been pregnant.  The FDA cleared the Product to be marketed for the former use, but expressly prohibited SPD from marketing the Product as a means for estimating the length of pregnancy.  As the FDA pointed out in its clearance letter for the Product, only doctors can measure how long a woman has been pregnant and they do so using an entirely different methodology than is employed by the Product.  Indeed, using the accepted methodology for measuring how long a woman has been pregnant, a doctor may estimate the length of pregnancy to be twice as long as what the Product might estimate to be the time that has passed since a woman ovulated.  Accordingly, the FDA explicitly warned SPD of the danger to women if they are misled into believing that the Weeks Estimator can be used to measure the length of their pregnancy and, in unmistakable and forceful language, prohibited SPD from marketing the Product for that improper purpose.

4.     By opting to begin marketing the Product pursuant to the FDA's clearance letter, SPD accepted the restrictions and limitations contained therein.  However, in pursuit of profit, and without regard to the obvious danger to the consuming public, SPD immediately began a massive campaign to perpetuate the false claim that the Product can tell a woman how long she has been pregnant.  It has implemented this wrongful and illegal campaign through virtually all means of communication, including, among other things, the labeling on the box in which the Product is sold, a widely-broadcast television commercial, internet advertising and point-of-purchase and other retail-level advertising.  SPD has even gone so far as to hire a well-known actress to appear as a guest on nationally syndicated television programs like "The Doctors" to promote the Product, falsely claiming, in her words (after identifying herself as a spokesperson for SPD), that "it actually estimates how many weeks of pregnancy you're in."

5.     SPD has promoted and continues to falsely promote the Product for that purpose even though the Product does not provide that estimate, the FDA determined that it cannot be marketed for that purpose and, perhaps most damningly, SPD itself acknowledges -- albeit in tiny print on the labeling for the Product -- that women should not use the Weeks Estimator for that purpose.

6.     As the FDA specifically found in its clearance letter for the Product, it can be harmful to women if they were to use the Product to estimate how long they have been pregnant. That is particularly true in the very precarious first trimester of pregnancy, when timing is critical to obtain appropriate prenatal care and, in certain circumstances, to the efficacy of alternatives for terminating pregnancy.

7.     The false advertising is also injurious to Church & Dwight because consumers have bought, and are buying, SPD's product, rather than competing products such as those

offered by Church & Dwight, based on SPD's false promise that the Product can tell women how long they have been pregnant.  This has resulted in SPD wrongfully earning millions of dollars in profits at the expense of both consumers and Church & Dwight, which has lost and continues to lose significant sales of its competing products and suffer deterioration of the goodwill associated with its products.

8.      Immediately upon learning of SPD's false advertising, Church & Dwight objected to SPD's conduct.

9.      Accordingly, Church & Dwight is entitled to judgment that SPD is liable for false advertising under the Lanham Act and related state law, and for breach of contract.  Church & Dwight is entitled to, among other things, an award of preliminary and permanent injunctive relief, including an order directing SPD to remove from retail outlets all false packaging and point-of-purchase materials and requiring SPD to engage in corrective advertising to alleviate the deception that has been caused in the market by its massive false advertising campaign.  Church & Dwight is also entitled to an award of substantial damages.

## PARTIES

10.     Church & Dwight is a Delaware corporation with its principal place of business in Ewing, New Jersey.

11.     SPD is a Swiss company with its principal place of business in Geneva, Switzerland.  SPD is joint venture between Procter & Gamble Co. ("P&G") and Alere, Inc. (formerly known as Inverness Medical Innovations) ("Alere").

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over the subject matter of this action under Section 39 of the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338, and pursuant to 28 U.S.C. § 1332(a) because this action is between a citizen of a State of the United States and a citizen of a foreign state and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  This Court also has supplemental jurisdiction over Church & Dwight's related state and common law claims pursuant to 28 U.S.C. §§ 1338 and 1367.

13.     This Court has personal jurisdiction over SPD because SPD regularly conducts business in the State of New York, and because SPD has falsely advertised and sold the Product to consumers in the State of New York and in this judicial district.  Personal jurisdiction is also proper because SPD has committed tortious acts in the State of New York and in this judicial district and Church & Dwight's claims arise out of such acts, and/or because SPD has otherwise made or established contacts in the State of New York and in this judicial district sufficient to permit the exercise of personal jurisdiction.

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because SPD is subject to personal jurisdiction in this judicial district and because a substantial part of the events giving rise to the claims in this action occurred in this judicial district.

## ALLEGATIONS OF FACT

A.     **The Parties and the Product**

15.     Church & Dwight and SPD both sell home pregnancy test kits.  Church & Dwight markets its tests under the FIRST RESPONSE brand, among others.  SPD markets its tests under the CLEARBLUE brand, among others.

16.     SPD and one of its two owners, Alere, dominate the home pregnancy test kit market in this country.  Although FIRST RESPONSE is the best-selling brand, nearly 70% of all home pregnancy test kits sold in the U.S. -- including competing and all private label brands -- are marketed and/or supplied by SPD or Alere.

17.     Like other home pregnancy tests, SPD's Weeks Estimator is designed to tell a woman whether or not she is pregnant.  The Product is also, according to the FDA's December 10, 2012 clearance letter (the "Clearance Letter") (Exhibit A hereto), capable of estimating a range of weeks (*i.e.,* 1-2, 2-3, or 3 or more) that may have passed since a woman ovulated.

18.     Ovulation is a biological event; it is the point at which a woman's egg (or "ovum") is released from one of her ovaries.  The medical profession does not measure how long a woman has been pregnant with reference to ovulation.  Rather, the medical profession measures how long a woman has been pregnant based on a universally accepted convention that her pregnancy began at the time of her last menstrual period.  That occurs, on average, approximately two weeks before ovulation.  Thus, the method used by the medical profession to determine the length of a woman's pregnancy is significantly different from the Product's estimate of the range of weeks since ovulation.

19.     The milestones for the timing of prenatal care and fetal development, as well as medical time limitations on methods for terminating pregnancy, are based on the convention used by medical professionals that pregnancy is deemed to begin at the time of a woman's last menstrual period.

**B.      The FDA's Regulation of Home Pregnancy Tests and its Clearance Letter for the Product**

20.     Although they are available over-the-counter (*i.e.,* without a prescription), home pregnancy test kits are considered to be medical devices and are regulated by the FDA.  The FDA does not permit a new home pregnancy test kit to be marketed unless the manufacturer has received clearance by the agency for the product to be marketed for a particular "intended use." Pursuant to 21 CFR § 807.92(a)(5), "[a]n intended use statement includes a general description of the diseases or conditions that the device will diagnose, treat, prevent, cure, or mitigate, including a description, where appropriate, of the patient population for which the device is intended."

21.     When the FDA decides to clear a home pregnancy test kit to be marketed, it issues a "clearance letter" to the manufacturer specifying the intended use (sometimes called "indications for use") for which it is permissible to market the product.  The FDA also issues a public "decision summary" regarding the clearance.

22.     In the Clearance Letter for the Weeks Estimator, the FDA stated that it had:

> determined that there is a reasonable likelihood that [the Product] will be used for an intended use not identified in the proposed labeling and that such use could cause harm.

Although the Clearance Letter does not expressly identify the "intended use not identified in the proposed labeling" that gave rise to the FDA's public health concerns, the limitations and restrictions identified in the Clearance Letter make plain that the agency did not want women to

7

think they could use the Product to estimate how long they have been pregnant. Thus, with regard to the package insert for the Product, the Clearance Letter directs that "Weeks Estimator Results should not be expressed as 'weeks pregnant' and should only be explained as the number of weeks that may have passed since ovulation." The Clearance Letter also instructs that "[p]erformance of the Weeks Estimator should not be displayed on [the] box labeling . . . ."

23. The Clearance Letter also requires that the Product's "indications for use" statement "must be ***prominently displayed in all labeling, including pouch box, and carton labels*** . . . in close proximity to the trade name, of a similar point size and in bold and shall be conveyed accurately – including any limitations – in all promotional materials[.]" (Emphasis added.)

24. Requiring that the statement of "indications for use" be ***prominently*** displayed on the package is particularly meaningful. In words that remove any doubt that SPD's advertising is false, that statement provides, in relevant part, that the Product:

> *cannot be used to determine the duration of pregnancy or to monitor the progression of pregnancy. Your doctor determines how many weeks pregnant you are based on the first day of your last menstrual period and ultrasound results. This test provides a different estimate that cannot be substituted for a doctor's determination of gestational age. Only a doctor can provide a reliable estimate of gestational age and only your doctor can monitor pregnancy progression.*

(Emphasis in original). SPD has completely defied the FDA's instruction by failing to prominently include that warning on the box in which the Weeks Estimator is sold, let alone in close proximity to, and in bold type that is similar in size to, the Product's trade name. So too, SPD has flagrantly and falsely advertised the Product for the very purpose prohibited by the statement of indications for use.

C.      **SPD's False Advertising of the Product**

25.     Starting since before the launch of the Product in August 2013, SPD has -- in direct contravention of the FDA's restrictions and limitations in the Clearance Letter and in violation of the Lanham Act and related state law -- consistently advertised it as being capable of estimating how many weeks a woman has been pregnant.  SPD's literally false advertising of the Product as a means to estimate the length of pregnancy has included, among other things, the labeling on the outside of the box for the Product found on store shelves, a widely-aired television commercial, internet advertising and point-of-purchase and retail-level advertisements.

*The Box for the Product*

26.     An image of the front panel of the box in which the Product has been sold since its launch is pictured below, and copies of all of the outer panels are attached hereto as Exhibit B.  (The front and back panels are substantively identical; the only difference is that one panel is laid out vertically, while the other is laid out horizontally.)



27.     The packaging clearly and unambiguously communicates that the Product can tell a woman how many weeks she has been pregnant.  The Product name  -- "Advanced **Pregnancy Test** With **Weeks Estimator**" (emphasis added) -- is prominently displayed on the outside of the

package alongside rectangular boxes that are intended to represent the Product's digital results window and depict the results given by the Product in terms of weeks of pregnancy (*i.e.*, "**Pregnant 1-2 Weeks**"; "**Pregnant 2 3 Weeks**"; and "**Pregnant 3+ Weeks**").   In violation of the FDA's directives, the indications for use statement does not appear in close proximity to the trade name or in similar font size or in bold font.

28.     One of the side panels on the Product box contains the statement, in tiny font towards the bottom of the panel, "Word 'weeks' appears for illustration purposes only."  This is evidently a reference to the "illustrative" digital display windows on the front and back panels, which include the word "weeks."  In reality, when the test stick is used that word does not appear in the display window.  Rather, the test stick actually says only "Pregnant 1-2," "Pregnant 2-3" or "Pregnant 3+.")

29.     The literal communication (or, at the very least, the necessary implication) of the Product packaging is that the Weeks Estimator can tell a woman how many weeks she has been pregnant -- specifically that she is 1-2 weeks pregnant, 2-3 weeks pregnant, or 3+ weeks pregnant.

*The Television Commercial*

30.     The same message -- that the Product can tell a woman how long she has been pregnant -- is conveyed by the 15-second national television spot (the "Commercial") that SPD ran for months.  A storyboard for the Commercial is attached hereto has Exhibit C.

31.     The Commercial begins with two women sitting across from each other at a small kitchen table.  The woman on the left tells the other woman "I'm pregnant."  Her friend smiles back and exclaims "Really?!"  The pregnant woman nods her head affirmatively, holds up two fingers and says "two weeks."  Her friend seems puzzled and asks, "You already went to the doctor?"  "Not yet," the pregnant woman says, and holds up a pregnancy test stick, "but I took

this new Clearblue test . . . ."  As she says this, the scene moves to a close-up of the test stick, with the Clearblue logo visible next to the digital display window.  In the display window the viewer sees the word "Pregnant," with the phrase "1-2 weeks*" appearing immediately underneath.  The viewer then hears the pregnant woman say, "It's like two tests in one!"

32.     The clear and literal communication of this scene is that the pregnant woman is two weeks pregnant and knows this because the Product told her so.  The scene also clearly communicates that the estimate given by the Product is the same as the estimate that a doctor would provide.

33.     The scene then changes to a graphic of a cluttered line chart.  The chart appears on-screen for about 3 seconds.  It depicts, among several other elements, the three display windows that are shown on the box for the Product (*i.e.*, "Pregnant 1-2 Weeks," Pregnant 2-3 Weeks" and "Pregnant 3+ Weeks").  As the announcer says "the new Clearblue pregnancy test also estimates how many weeks," a light pass illuminates each of the three display windows sequentially, drawing the viewer's eye away from the bottom of the screen and towards the top. When the announcer says "weeks" -- a word she emphasizes -- the scene changes to a shot of the box for the Product as a large, pink, animated image of the words "Weeks Estimator" is shown "jumping" onto the box.  As the words "jump," the announcer says "Weeks Estimator," and then concludes "only from Clearblue."

34.     Thus, the scenes that follow the opening kitchen scene serve to reinforce the literal (and blatantly false) message that the Product can estimate how many weeks a woman has been pregnant.  Notably, the FDA-mandated indications for use statement does not appear at all.

*The Product Page on SPD's Website*

35.     SPD maintains a dedicated page on the Clearblue website for the Product (the "Product Web Page"), and has conveyed on the Product Web Page the literally false message

that the Product can estimate how many weeks a woman has been pregnant.  A copy of the

Product Web Page, as published by SPD from the launch of the Product until it was recently

altered, is attached hereto as Exhibit D.

36.     At the very top of the Product Web Page (before it was recently altered by SPD)

is a blue banner with the claim "the ONLY Pregnancy Test that Estimates Weeks," next to

images of the box for the Product and a test stick showing the words "Pregnant 1-2 weeks" in the

display window.  Below the banner is the similar statement "NEW! Pregnancy Test with Weeks

Estimator."  Just underneath that is a large image of the test stick showing the words "Pregnant

1-2 weeks" in the display window.  Directly under the image of the test stick is the claim "It's

Like 2 Tests in 1!"  The Product Web Page goes on to say:

> Clearblue® Advanced Pregnancy Test with Weeks Estimator is the
> FIRST and ONLY pregnancy test that not only tells you if you are
> pregnant *but also estimates the number of weeks*.  It's like 2 tests
> in 1! This is the latest innovation in home pregnancy testing
> providing information that you can trust.  Knowing more helps you
> prepare for the exciting future ahead -78% of women surveyed said
> they believe it is important to know *how far along they are*.

(Emphasis added).

37.     It is not until the second paragraph, at the bottom of the first screen, that the

Product Web Page says anything about ovulation and, even then, what is said is deceptive.

Specifically, the Product Web Page states that "[t]he unique and patented design of the Weeks

Estimator is the only one of its kind.  It uses two separate testing strips to estimate how many

weeks *based on* time since ovulation (1-2 weeks, 2-3 weeks, 3+ weeks)" (emphasis added).  The

clear message of this statement, in context, is that the Product uses "the time since ovulation" as

the basis for estimating how many weeks a woman has been pregnant.  It does not make clear

that the Product actually does not measure the length of pregnancy at all, but rather is only

estimating how many weeks have passed since a woman ovulated.

38.     Only at the bottom of the second screen does the Product Web Page disclose that physicians estimate pregnancy based on a different method than is used by the Product to estimate "weeks."  And it is not until the very bottom of the Product Web Page, on the third screen, that the FDA-mandated indications for use statement appears.  (In violation of the FDA's instructions in the Clearance Letter, it is neither in close proximity to the trade name nor in the same font size or in bold font.)  Any consumer who did not read that far, or did not fully understand the import of the indications for use statement, would believe that the Product is effective at estimating the number of weeks a woman has been pregnant.

*Point-of-Purchase/Retail Advertising*

39.     SPD has also made the literally false claim that the Product can estimate how many weeks a woman has been pregnant in point-of-purchase and retail-level advertising.  For instance, SPD has provided to retailers shelf display trays; each tray has either the claim "First pregnancy test to **estimate weeks**," or "**How far along** are you?" (emphasis in original) printed on the front.  Retailers place the two trays next to each other on store shelves.  A photo of the shelf display trays are attached hereto as Exhibit E.

40.     The trays do not disclose, or even allude to, the fact that the Product is only capable of estimating weeks since ovulation, as opposed to how many weeks a woman has been pregnant.  Nor do they contain the FDA-mandated indications for use statement.  The trays, placed next to each other and in combination, clearly communicate (or, at the very least, necessarily imply) that the Product can tell a woman how many weeks she has been pregnant.

41.     SPD has further disseminated its false message via internet advertisements and third party advertisements.  For instance, a web advertisement for the Product (a copy of which is attached hereto as Exhibit F) states:  "Clearblue Advanced Digital Pregnancy Test with Weeks

Estimator.  Is there a baby on board?  How far along?  Find out!"  Copies of similar advertising are attached hereto collectively as Exhibit G.

*The Product Cannot Estimate How Many Weeks A Woman Has Been Pregnant*

42.     The literal message conveyed by all of the above-described advertisements is that the Product can tell a woman how many weeks she has been pregnant.  That message is false.  As discussed above, in clearing the Product, the FDA expressly found that it cannot be used to estimate how many weeks a woman has been pregnant.  The FDA's finding in this regard is correct; the medical profession dates pregnancy from a woman's last menstrual period, not from ovulation.  SPD itself acknowledges that this is the case by including the indications for use statement on the package insert for the Product and on a side panel of the box in which the Product is sold (albeit in inconspicuous fine print that will not be read or understood by consumers).

43.     Simply put, and as the FDA explicitly found, the Product does not estimate, and is incapable of estimating, how long a woman has been pregnant.  Thus, it is false for SPD to advertise the Product as being able to estimate how many weeks a woman has been pregnant.

*SPD's False Claim Concerning the Accuracy of the "Weeks Estimator" Function*

44.     In addition to falsely advertising the Product as being capable of telling a woman how many weeks she has been pregnant, SPD has also falsely advertised the accuracy of the Product's "weeks estimator" function.  Specifically, in a press release announcing the launch of the Product, SPD (through one of its two owners, P&G) claimed that the Product was "approximately 93 percent accurate in estimating the number of weeks based on time since ovulation."  A copy of the press release is attached hereto as Exhibit H.  This same claim was made in a promotional video for the product that SPD published on YouTube.

45.     This statement concerning the purported accuracy of the Product in estimating "weeks based on time since ovulation" is false.  The falsity of the statement is evidenced by SPD's own package insert for the Product, which states that "Agreement of Weeks Estimator results with clinical findings ranged widely from 45%-99%."

**D.**     **Harm Caused By SPD's False Advertising**

46.     The false claim that the Product can estimate how long a woman has been pregnant has led to nearly unprecedented sales for a newly-launched home pregnancy test kit. These remarkable sales levels are not surprising, since one would expect there to be consumer interest in a product that actually could estimate how many weeks a woman has been pregnant (which, of course, the Product cannot do).  Indeed, according to the Product Web Page, "78% of women surveyed said they believe it is important to know how far along they are."

47.     Similarly, SPD's false advertising has damaged (and, unless it is enjoined, will continue to damage) the goodwill associated with the FIRST RESPONSE brand, as consumers are being deceived to believe that a competing product has an attractive feature -- *i.e.*, the purported ability to tell women how long they have been pregnant -- that the FIRST RESPONSE products do not have.

48.     SPD's false advertising is also very likely to damage consumer confidence in the home pregnancy test kit category as a whole.  Although many women will not read all of the FDA-mandated information contained in the package insert for the Product with care, some will. Those who do will discover that, notwithstanding SPD's false promises in its advertising, the Product actually does not estimate how many weeks a woman has been pregnant and is actually not capable of doing so.  Likewise, other women will learn from their doctor that the Weeks Estimator result did not tell them how many weeks they have been pregnant.  Such consumers will invariably feel they have been deceived.

15

49.     Consumers who feel misled by SPD's false advertising for Weeks Estimator are likely to doubt other claims about innovative home pregnancy test kit features, regardless of the identity of the advertiser.  Such damage to consumer confidence in the home pregnancy test kit category generally is likely to have a significant negative impact on the FIRST RESPONSE brand in particular, since it has long been known for its innovative technology.

50.     In addition to the harm being caused to Church & Dwight, SPD's false advertising also poses a threat to public health, as the FDA found could occur were women to believe they can use the Product to find out how many weeks they have been pregnant.

51.     As the FDA recited in its Clearance Letter, there is a material difference between the 'weeks since ovulation' estimate given by the Product and the dating of pregnancy by physicians.  Thus, for example, if the Product measures 1-2 weeks for a particular woman, a physician would likely date her pregnancy at 3-4 weeks -- approximately twice as long as the "estimate" provided by the Product.

52.     It is well-known that proper prenatal care during the first trimester can be of critical importance and that women should be encouraged to seek medical care as early in pregnancy as possible.  However, some women -- particularly those who do not have ready access to health care due to income constraints or similar factors -- may opt to defer seeking medical care in what they believe to be the very first few weeks of pregnancy.  If such women were to use the Product and wrongly believe -- due to SPD's false advertising -- that they are only 1-2 weeks pregnant, they may choose not to see a doctor or otherwise modify their behavior for several more weeks, even though they are actually 3-4 weeks pregnant as measured by medical professionals.

53.     As noted, the key milestones for prenatal care and fetal development, as well as the time frame during which certain methods of pregnancy termination will be effective, are based on how the medical profession dates the length of pregnancy, not on the different estimate provided by the Product.  There are thus a number of choices that a woman might make in her first trimester that could be materially affected by the mistaken belief that she became pregnant two weeks later than a physician would date her pregnancy.

E.





## COUNT I

**(False Advertising –
Lanham Act § 43(a), 15 U.S.C. § 1125(a))**

63.     Church & Dwight repeats and realleges the allegations set forth in paragraphs 1-62 above with the same force and effect as if set forth fully herein.

64.     SPD's false and misleading statements constitute false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

65.     SPD has disseminated the false and misleading statements described herein to the public through commercial advertising and promotion, and thus caused them to enter interstate commerce.

66.     SPD's false and misleading statements of fact concerning the characteristics, performance and efficacy of the Product are material, and have and are likely to continue to influence consumers' purchasing decisions.

67.     The Product competes directly with Church & Dwight's home pregnancy test kits in the relevant market, and SPD's false advertising claims have actually deceived or have a tendency to deceive a substantial number of consumers in that market.

68.     SPD's false and misleading advertising has caused and continues to cause irreparable injury to the public and to Church & Dwight's business, goodwill and reputation, and Church & Dwight has no adequate remedy at law.  Upon information and belief, SPD's actions will continue if not enjoined.

69.     As a direct and proximate result of SPD's false and misleading advertising, Church & Dwight has incurred damages in an amount to be proven at trial.  Such damages include, among other things, lost sales, harm to Church & Dwight's business reputation and

goodwill, lost profits and harm to the value and goodwill associated with the FIRST RESPONSE brand.

70.     SPD knew, or by exercise of reasonable care should have known, that the above-described advertising claims are false and/or misleading, and are likely to deceive the public. Accordingly, SPD's actions were willful, making this an exceptional case within the meaning of 15 U.S.C. §1117.

## COUNT II

### (Violation of N.Y. Gen. Bus. Law § 349)

71.     Church & Dwight repeats and realleges the allegations set forth in paragraphs 1-70 above with the same force and effect as if set forth fully herein.

72.     SPD's false and deceptive advertising contains materially misleading statements of fact that concerning the performance and efficacy of the Product.

73.     SPD's false and misleading statements of fact may deceive pregnant women about how long they have been pregnant, which may affect their decisions and behaviors concerning prenatal care in ways that have negative health consequences.  SPD's false and misleading statements thus threaten injury to the public and public health.

74.     As a direct and proximate result of SPD's wrongful acts, Church & Dwight has been injured and incurred damages in an amount to be proven at trial.

75.     Accordingly, the foregoing actions of SPD constitute a knowing and willful violation of N.Y. Gen. Bus. Law § 349.



## PRAYER FOR RELIEF

WHEREFORE, Church & Dwight prays for judgment as follows:

1.     For an Order and Judgment which:

(a)     Preliminarily and permanently enjoins SPD, its officers, agents, servants and employees, and all persons in active concert and participation with them, including their affiliates, from further disseminating the false and deceptive advertising claims described herein in any form or medium;

(b)     Requires SPD to withdraw and/or retrieve all offending advertising materials, including the labeling on the packaging for the Product, from the marketplace;

(c)     Requires SPD to disseminate among consumers corrective advertising to dispel the false and deceptive messages contained in the subject advertising;

2.     For an order directing SPD to account for, and to pay over to Church & Dwight, all gains, profits and advantages derived by SPD from the above-described wrongful acts;

3.     For an award of monetary damages sustained by Church & Dwight as a result of SPD's unlawful conduct, in an amount to be proved at trial; and

4.     For an order multiplying or otherwise enhancing any award under paragraphs 2 and 3 directly above because of SPD's willful and deliberate wrongdoing described herein; and

5.     For an award of punitive damages resulting from SPD's state law violations in an amount to be proven at trial;

6.     For an award of the costs of this action and its reasonable attorneys' fees incurred herein by Church & Dwight as authorized by law; and

7.     For an award of such other and further relief as this Court deems just and proper.

DATED:     March 3, 2014

Respectfully Submitted,

PROSKAUER ROSE LLP
Richard M. Goldstein
Michael T. Mervis
Baldassare Vinti
Victoria L. Loughery
Eleven Times Square
New York, NY 10036
Tel:  212.969.3000
Fax:  212.969.2900
E-mail:  rgoldstein@proskauer.com
            mmervis@proskauer.com
            bvinti@proskauer.com
            vloughery@proskauer.com

*Attorneys for Plaintiff*