USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: DEC 1 9 2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Church & Dwight Co. Inc.,

         Plaintiff,

    –v–

SPD Swiss Precision Diagnostics, GmbH,

         Defendant.

14-cv-585

MEMORANDUM AND ORDER

---

ALISON J. NATHAN, District Judge:

On December 10, 2014, the Court received a letter via email from Plaintiff Church & Dwight Co. Inc. ("C&D") raising a discovery dispute concerning a number of documents for which Defendant SPD Swiss Precision Diagnostics, GmbH ("SPD") is claiming privilege. On December 12, 2014, SPD submitted a response letter. Dkt. No. 211.

## I.    BACKGROUND

The Court earlier ordered SPD to amend its privilege log to comply with Local Civil Rule 26.2, including amendment to indicate exactly which documents were shared with any third party. Dkt. No. 184 at 1. C&D now argues that SPD continues to withhold 167 documents from discovery on privilege grounds even though they were disclosed to third parties. C&D further notes that of these 167 documents, only 16 were sent by counsel, and the vast majority of the documents are communications between non-legal SPD employees and outside agencies.

SPD counters that the launch of the product at issue in this litigation, the Weeks Estimator, was a unique event in terms of its complexity, scope, and novelty due to the fact that the U.S. Food & Drug Administration ("FDA") cleared the product by way of a rarely used regulatory clearance process. SPD's core contention is that in light of the complex regulatory scheme to which the Weeks Estimator was subject, it was essential for privileged legal advice

1

and other communications to be shared between its outside marketing firm and SPD's in-house counsel.

## II. DISCUSSION

"The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) (citing *In re Cnty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007)). The privilege "exists for the purpose of encouraging full and truthful communication between an attorney and his client and 'recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.'" *In re von Bulow*, 828 F.2d 94, 100 (2d Cir. 1987) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). The party asserting the privilege bears the burden of establishing its application and the Court will construe the privilege narrowly, applying it "only where necessary to achieve its purpose." *Mejia*, 655 F.3d at 132.

Sharing otherwise privileged communications with third parties generally waives the privilege, but the Second Circuit has recognized that "the inclusion of a third party in attorney-client communications does not destroy the privilege if the purpose of the third party's participation is to improve the comprehension of the communications between attorney and client." *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999); *see also United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961). In their letters, however, both parties assume that the proper mode of analysis is the "functional equivalent" exception to privilege waiver, under which "communications between a company's lawyers and its independent contractor merit protection if, by virtue of assuming the functions and duties of full-time employee[s], the contractor is a *de facto* employee of the company." *Exp.-Imp. Bank of the U.S. v. Asia Pulp & Paper Co., Ltd.*, 232 F.R.D. 103, 113 (S.D.N.Y. 2005) (Francis, M.J.) (collecting cases). Although a number of courts around the country, including several within this Circuit, have adopted this exception, it has never been recognized by the Second Circuit. *Id.* Without

2

deciding whether the functional equivalent exception is valid, the Court concludes that SPD has failed to satisfy its burden under either mode of analysis.

    A.    **SPD Has Not Shown that the Communications Were Made to the Third Party to Improve Comprehension of Attorney-Client Communications**

Beginning with the accepted principle that the presence of a third party does not waive the attorney-client privilege if that third party is necessary to improve comprehension of the communication between attorney and client, the Court notes that this exception is most often applied in the context of a translator or an accountant without whom the lawyer would be unable to provide competent legal advice. *See Ackert*, 169 F.3d at 139 ("*Kovel* recognized that an accountant can play a role analogous to an interpreter in helping the attorney understand financial information passed to the attorney by the client."). Here, SPD makes no showing as to how the outside marketing firm improved counsel's comprehension of SPD's communications to counsel, or vice versa. Moreover, courts have generally rejected application of the "translator" exception in the context of outside marketing firms. *See LG Elec. U.S.A., Inc. v. Whirlpool Corp.*, 661 F. Supp. 2d 958, 964 (N.D. Ill. 2009) (noting that "Whirlpool does not contend that its in-house counsel cannot understand proposed advertisements and marketing plans without [advertising] agency assistance—its counsel communicates directly with the agencies as a matter of expedience."); *Calvin Klein Trademark Trust v. Wachner*, 198 F.R.D. 53, 54 (S.D.N.Y. 2000) (observing that the outside public relations firm, "far from serving the kind of 'translator' function served by the accountant in *Kovel*, *supra*, is, at most, simply providing ordinary public relations advice so far as the documents here in question are concerned."). Finally, SPD did not challenge C&D's assertion that SPD easily could have conveyed marketing limitations to its marketing firm without disclosing legal advice or that it already had in place a procedure for doing so.

It is undoubtedly true that the release of an FDA-regulated product, like the Weeks Estimator, requires the manufacturer to convey to its outside marketing firm certain messages or claims about the product that have been approved by the manufacturer's counsel. But the

3

manufacturer can convey that approved content without divulging privileged communications. If it chooses to divulge privileged communications to a third party, in order to retain the attorney-client privilege, it must show that the third party enabled counsel to understand aspects of the client's own communications that could not otherwise be appreciated in the rendering of legal advice. *Calvin Klein Trademark Trust*, 198 F.R.D. at 55. SPD makes no such showing here.

### B. SPD Has Not Shown that the Communications Were to a Third Party Who Is the Functional Equivalent of an In-House Employee

As noted above, the Second Circuit has not adopted the equivalent function exception. Because the Second Circuit has recognized very limited exceptions to privilege waiver, the Court has doubts as to whether it would endorse such an approach. Nonetheless, the Court concludes that even if the exception were valid, SPD has failed to show that it is applicable on the facts here. SPD emphasizes the fact that its in-house marketing team was too small to handle the Weeks Estimator's launch. SPD further notes that the complex regulatory scheme to which the product was subject made it essential for privileged legal advice and other communications to be shared between these consultants and SPD's in-house counsel. Applying the factors that courts use to determine when the "equivalent function" exception applies, *Exp.-Imp. Bank of the U.S.*, 232 F.R.D. at 113, the Court concludes that SPD has failed to satisfy its burden of showing that the exception is applicable here.

First, SPD has argued only that its in-house marketing team was too small to do the job on its own, not that the outside marketing firm had primary responsibility for a key corporate job. *Id.* (citing *In re Bieter*, 16 F.3d 929, 933-34 (8th Cir. 1994)).

Second, SPD has not indicated "whether there was a continuous and close working relationship between the consultant and the company's principals on matters critical to the company's position in litigation." *Id.* (citing *In re Bieter*, 16 F.3d at 938; *In re Copper Market Antitrust Litig.*, 200 F.R.D. 213, 218-19 (S.D.N.Y. 2001)). Unlike *In re Copper Market Antitrust Litigation*, on which SPD heavily relies, SPD's outside marketing firm was not hired as part of a

4

litigation strategy to assist a foreign company completely unfamiliar with how to handle local media.

Third, SPD has not shown "whether the consultant is likely to possess information possessed by no one else at the company." *Id.* (citing *In re Bieter*, 16 F.3d at 938)). On this point it is worth noting that *In re Bieter*, the first case to recognize the equivalent function exception, involved a two-person partnership that hired an independent contractor to fulfill many functions that would otherwise have been undertaken by the other members of the partnership or one of its employees. *In re Bieter*, 16 F.3d at 933.

SPD hangs its hat on *Twentieth Century Fox Film Corp. v. Marvel Enterprises*, No. 01 Civ. 3016 (AGS)(HBP), 2002 U.S. Dist. LEXIS 22215 (S.D.N.Y. Nov. 15, 2002). Although that case contains few factual details, it appears that Magistrate Judge Pitman was swayed by the fact that, like *In re Bieter*, several key functions of the film company were entirely outsourced to third-party contractors who had no functional equivalents in-house. SPD asserts only that its outside marketing firm was hired to assist its in-house marketing staff with a large and complicated product roll out, which makes SPD no different than most companies who hire external advertising agencies. Applying the equivalent function exception to the facts here would swallow the privilege waiver rule and would extend the attorney-client privilege to communications with any third party who was hired to assist the client with something the client could not do on its own.

The Court finds *LG Electronics* a more apt comparison. In that case, the district court also applied the "equivalent function" test in the alternative and, drawing heavily on a similar factual scenario in *In re Vioxx Products Liability Litigation*, 501 F. Supp. 2d 789 (E.D. La. 2007), observed that "Whirlpool's agencies may prepare its marketing materials, but Whirlpool, like Merck, exercises the final say in all of its advertisements, closely monitors all agency work, and retains all rights in the agencies' work product." *Id.* at 965. These facts undermined Whirlpool's argument that its outside PR firm was a *de facto* employee, as opposed to a third-party independent contractor operating at the direction of Whirlpool's in-house staff. There is

nothing to suggest that SPD's relationship with its external marketing firm works any differently. Furthermore, there is no indication that failing to recognize the attorney-client privilege here would have any damaging consequences: "Legal concerns expressed to [the client] need to be adopted by [the client] and then transmitted to the consultants as corporate concerns and policies independent of the explicit advice previously received. [SPD] is the client, not the consultants." *Id.* at 964 (citing 1 Paul R. Rice, *Attorney-Client Privilege in the United States* § 4:19 (Thomson West 2d ed. Supp. 2009)).

### III. CONCLUSION

Applying prevailing Second Circuit case law, the Court concludes that SPD has failed to satisfy its burden of showing that revealing otherwise privileged communications to its third-party marketing firm enabled counsel to understand aspects of the client's own communications that could not otherwise be appreciated in the rendering of legal advice. And even if the Second Circuit were to adopt the functional equivalent exception, the Court concludes that SPD has failed to satisfy the very narrow grounds on which this exception rests.

Finally, C&D filed its letter via email with proposed redactions based on SPD's confidentiality designations. The Court provisionally grants the redaction request, but notes, as previously stated, that it may revisit its decision to approve a redaction request following the resolution of the present dispute or upon request. *See* Dkt. No. 183. The Court hereby orders C&D to file via ECF redacted versions of its letter and associated exhibits, and the Court will file unredacted versions of the letter and associated exhibits under seal.

SO ORDERED.

Dated: December 19 2014
New York, New York

ALISON J. NATHAN
United States District Judge