**PROSKAUER ROSE LLP**
Richard M. Goldstein (RG 8329)
Michael T. Mervis (MM 0306)
Baldassare Vinti (BV 0080)
Jeffrey H. Warshafsky (JW 3035)
Q. Jennifer Yang (QY 1436)
Eleven Times Square
New York, NY 10036
Tel:  212.969.3000
Fax:  212.969.2900

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHURCH & DWIGHT CO., INC.,<br><br>Plaintiff,<br><br>v.<br><br>SPD SWISS PRECISION DIAGNOSTICS, GMBH,<br><br>Defendant. | Civil Action No. 14 CV 585 (AJN)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO PRECLUDE TESTIMONY REGARDING INFORMATION NOT PRODUCED IN DISCOVERY** |

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ........................................................................................................................ 2

ARGUMENT .............................................................................................................................. 5

    *A. SPD's Failure to Meet Its Disclosure Obligations Pursuant to Fed. R. Civ. P. 26*............ 5

    *B. SPD's Failure to Produce Documents Responsive to C&D's Document Requests* ........... 8

CONCLUSION............................................................................................................................ 9

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Design Strategy, Inc. v. Davis*,
  469 F.3d 284 (2d Cir. 2006) ................................................................................................5, 6

*Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*,
  642 F. Supp. 2d 276 (S.D.N.Y. 2009) .......................................................................................5

*Fund Comm'n Serv., II, v. Westpac Banking Co.*,
  No. 93 Civ. 8298, 1996 U.S. Dist. LEXIS 11937 (S.D.N.Y. Aug. 15, 1996) ...........................8

*Gaste v. Kaiserman*,
  863 F.2d 1061 (2d Cir. 1988) ....................................................................................................5

*Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc.*,
  No. 07 Civ. 07483, 2010 U.S. Dist. LEXIS 127869 (S.D.N.Y. Dec. 2, 2010) ..........................6

*Koppell v. N.Y. State Bd. Of Elections*,
  97 F. Supp. 2d. 477 (S.D.N.Y. 2000) ........................................................................................5

*New World Sols., Inc. v. NameMedia Inc.*,
  150 F. Supp. 3d 287, 310 (S.D.N.Y. 2015) ...............................................................................8

*Playboy Enterprises, Inc. v. Dumas*,
  831 F. Supp. 295 (S.D.N.Y. 1993), *aff'd in part, rev'd in part,* 53 F.3d 549
  (2d Cir. 1995) ............................................................................................................................5

*Richmond v. Gen. Nutrition Ctrs. Inc.*,
  No. 08 Civ. 3577, 2012 U.S. Dist. LEXIS 32070 (S.D.N.Y. Mar. 9, 2012) .........................5, 8

**STATUTES**

15 U.S.C. § 1117(a) ..........................................................................................................................5

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26 ....................................................................................................................5, 6, 7

Fed. R. Civ. P. 26(a)(1)(A)(iii) ........................................................................................................5

Fed. R. Civ. P. 26(a)(3) ...............................................................................................................5, 7

Fed. R. Civ. P. 26(e)(1) ...............................................................................................................7, 8

Fed. R. Civ. P. 37(c)(1) .................................................................................................................6, 8

**PRELIMINARY STATEMENT**

This motion seeks to preclude defendant SPD Swiss Precision Diagnostics GmbH ("SPD") from proffering testimony about two categories of information that SPD was obligated to but did not ever produce to plaintiff Church & Dwight Co., Inc. ("C&D").

First, SPD's Chief Financial Officer, Cristobal Montero, says in his direct testimony that the contractual prices like those used by C&D's damages expert, Dr. Gregory Bell, to determine SPD's profits available for disgorgement are ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬ Dr. Keith Ugone, SPD's damages expert, contends in his direct testimony that Dr. Bell's methodology is improper because it did not take such ▬▬▬ ▬▬▬▬ into account. However, nowhere in his direct testimony does Mr. Montero state that SPD actually made or received such ▬▬▬▬▬▬▬▬ during the damages period. Nor does Mr. Montero or Dr. Ugone cite to any documentary evidence that any such payments occurred, let alone documents that specify the number or dollar amount of any such payments. This is unsurprising, since none was produced by SPD in discovery, notwithstanding that C&D requested documents of exactly this sort.

Second, Mr. Montero testifies that ▬▬▬ returns of the Clearblue Advanced Digital Pregnancy Test with Weeks Estimator (the "Product" or "Weeks Estimator") were made between March 2017 and August 2017. Dr. Ugone claims that such returns should be deducted when calculating profits available for disgorgement. However, while Mr. Montero undoubtedly based his testimony regarding this very precise number of returns on some SPD documents or database information, once again, neither Mr. Montero nor Dr. Ugone cites to any documentary evidence regarding these alleged Product returns, and none was produced by SPD in discovery, although such documents were also requested by C&D.

In defying its obligation to produce documents and information about alleged ▮▮▮ ▮▮▮ and returns between March 2017 and August 2017, SPD has deprived C&D of the opportunity to respond to Dr. Ugone's opinions on those subjects based on a review and assessment of such documentary evidence. On this basis, all testimony offered by SPD regarding these two points should be excluded.

## BACKGROUND

SPD has contracted with various separate companies for goods and services relating to the production and sale of Clearblue pregnancy tests, including the Weeks Estimator. ▮▮▮



▮▮▮ October 9, 2017 Declaration of Michael Mervis ("Mervis Decl."), Ex. A (Direct Testimony of Cristobal Montero ("Montero DT")) ¶ 7.[1] In calculating SPD's profits available for disgorgement, C&D's expert, Dr. Bell, used the ▮▮▮ ▮▮▮ to determine SPD's revenues and cost of goods sold.

In his direct testimony, Mr. Montero contends that the ▮▮▮ ▮▮▮ ▮▮▮ ▮▮▮ Mervis Decl., Ex. A (Montero DT) ¶ 15. Dr. Ugone claims, based on Mr. Montero's testimony, that Dr. Bell's ▮▮▮ ▮▮▮ ▮▮▮

---

[1] ▮▮▮ Mervis Decl., Ex. B (Direct Testimony of Keith Ugone ("Ugone DT")) ¶ 29. ▮▮▮ Id. at ¶ 30.

2

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████ Mervis Decl., Ex. B (Ugone DT) ¶ 56(b)(iii). However, Mr. Montero does not testify that SPD actually made or received any such payments during the relevant time period. *Id.* And, assuming that such payments were made or received by SPD, Mr. Montero does not testify as to the number or amount of any such payment. *Id.* And critically, SPD has never provided any data or documents regarding the existence or amount of these alleged ████████████ who made and received them or even whether there were any during the relevant period. Dr. Ugone acknowledges that such data was never provided, but claims (based on Mr. Montero's testimony) that ███████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ *Id.*, n.144. But C&D and Dr. Bell have no way of knowing whether this is true given that SPD never produced any underlying documentation or evidence concerning whether any ████████████ were made and, if they were, whether they could or should be factored into a disgorgement analysis. Thus, Dr. Bell could not possibly have considered these alleged ████████████ in his analysis and had no obligation to do so.

In addition, Dr. Ugone asserts that there were returns of the Product that should also be deducted when determining SPD's profits to be disgorged. Mervis Decl., Ex. B (Ugone DT) n. 8. Dr. Ugone's sole factual basis for the number of returns made between March 2017 and August 2017 is Mr. Montero's direct testimony. *Id.* Mr. Montero claims that ████ Product returns were made during that period. *Id.*, Ex. A (Montero DT) ¶ 34. Although Mr. Montero no doubt obtained this information from some documents or database, he does not cite any supporting documentary evidence and, in fact, SPD produced no documents evidencing that any

3

Product returns were made during this period, much less evidencing the specific number of returns claimed by Mr. Montero and Dr. Ugone.

SPD's failure to produce documents regarding the above topics is inexcusable. Not only was SPD required to provide such information as part of its initial disclosures and the ongoing obligation to supplement them, but also in response to C&D's document requests. During the damages discovery phase, C&D requested and SPD agreed to produce numerous categories of documents that encompassed information regarding ▮▮▮▮▮▮▮▮ and Product returns, including, for example:

- "Documents sufficient to show the weekly and monthly wholesale and retail net profits earned from sales of the Weeks Estimator from date of first sale of the Weeks Estimator through the present"[2] (Mervis Decl., Ex. C at 7-8 (Request #4));

- "Documents sufficient to show how SPD calculates gross revenue and *net profits*, including, but not limited to, documents showing all costs and expenses broken out by category and/or item of expense" (*id.* at 10-11 (Request #8)) (emphasis added);

- "Documents sufficient to show the weekly and monthly wholesale and retail *net* profits earned from sales of each Clearblue [pregnancy test product]" (*id.* at 27-28 (Request #24)) (emphasis added)[3]; and

- "Documents sufficient to calculate the percentage of SPD's revenues and profits attributable to the Weeks Estimator" (*id.*, Ex. D at 10 (Request #10)).

---

[2] Church & Dwight's document requests were expressly stated to be "continuing," thus obligating SPD to produce documents received, discovered or generated after any initial response to the requests. *See* Mervis Decl., Ex. F at 4-5.

[3] Although SPD initially objected to producing documents for Clearblue products other than the Weeks Estimator, it later agreed to produce responsive documents with respect to all Clearblue pregnancy tests. *See* Mervis Decl., Exs. C & E.

4

**ARGUMENT**

  A. *SPD's Failure to Meet Its Disclosure Obligations Pursuant to Fed. R. Civ. P. 26*

  A party must disclose all documents and exhibits that it plans to introduce at trial for purposes other than impeachment. Fed. R. Civ. P. 26(a)(3). Relatedly, parties may not offer expert testimony based on documents not produced during discovery. *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006); *Richmond v. Gen. Nutrition Ctrs. Inc.*, 2012 U.S. Dist. LEXIS 32070, at *28 (S.D.N.Y. Mar. 9, 2012) (precluding the use at trial of "any damages evidence not produced in discovery or any damage calculation not based on documents produced in discovery"); *Koppell v. N.Y. State Bd. Of Elections*, 97 F. Supp. 2d. 477, 482 (S.D.N.Y. 2000) (excluding expert testimony where party failed to produce the tapes on which the expert relied).

  Moreover, where parties offer damages calculations, they must turn over during discovery "the documents or other evidentiary material . . . on which each computation is based." Fed. R. Civ. P. 26(a)(1)(A)(iii). In the context of a Lanham Act disgorgement award, where the defendant bears the burden of proving any deductions from revenues available to be disgorged (15 U.S.C. § 1117(a)), courts do not permit defendants to seek deductions based on conclusory statements that are not backed up with underlying documentation. *See, e.g.*, *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 642 F. Supp. 2d 276, 293 (S.D.N.Y. 2009) (rejecting the defendant's calculation of costs where the defendant provided no documentation and did not explain its failure to produce such data); *Playboy Enterprises, Inc. v. Dumas*, 831 F. Supp. 295, 319 (S.D.N.Y. 1993), *aff'd in part, rev'd in part,* 53 F.3d 549 (2d Cir. 1995) (declining to give weight to apportionment testimony where "there is no evidence of even the underlying cost"); *Gaste v. Kaiserman*, 863 F.2d 1061, 1070 (2d Cir. 1988) (declining to consider alleged costs that were "sorely lacking in documentation").

Failure to produce documents pursuant to the above rules precludes use of that information at trial, unless the failure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1); *Design Strategy,* 469 F.3d at 295 (upholding decision to preclude evidence of lost profits where plaintiff failed to produce underlying documentation as required under Rule 26); *Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc.*, 2010 U.S. Dist. LEXIS 127869, at *2-3 (S.D.N.Y. Dec. 2, 2010) (excluding evidence at trial where underlying documents were not produced during discovery).

SPD's attempt to proffer expert testimony about the alleged significance of ▇▇▇ and alleged Product returns between March 2017 and August 2017 through the direct testimony of Mr. Montero and Dr. Ugone flies in the face of this settled law. Dr. Ugone points to the alleged ▇▇▇ to criticize Dr. Bell's disgorgement analysis. Specifically, Dr. Ugone claims that the ▇▇▇ Mervis Decl., Ex. B (Ugone DT) ¶ 56(b)(iii).

As noted, Dr. Ugone does not claim to have seen, let alone considered, any data regarding ▇▇▇ Indeed, he acknowledges it was not provided by SPD. Mervis Decl., Ex. B (Ugone DT), n. 144. Nonetheless, based on Mr. Montero's testimony, he claims that ▇▇▇ *Id.*. C&D and Dr. Bell have no way of assessing or challenging this (albeit equivocal) contention without seeing the data, which SPD has failed to produce. It is therefore

6

entirely improper and prejudicial for SPD and Dr. Ugone to proffer opinions about the supposed significance of an ▮▮▮▮▮ since C&D has had no opportunity to review the underlying documents or question Mr. Montero or Dr. Ugone about them.

Moreover, neither Mr. Montero nor Dr. Ugone give any specifics about how many payments there may have been, who made the payments, who received them, or the amount of any such payments. Thus, Dr. Ugone's opinion that ▮▮▮▮▮ render the contractual prices used by Dr. Bell inappropriate for a disgorgement analysis appears to be pure speculation.

In addition, SPD proffers the testimony of Mr. Montero to claim that ▮▮ Product returns took place between March 2017 and August 2017. Mr. Montero must have obtained this information from some SPD documents or database, but SPD has failed to produce such documents or information. Dr. Ugone relies solely on Mr. Montero's testimony in opining that ▮▮ Product returns should be deducted, but does not purport to have seen the underlying documents upon which Mr. Montero's testimony must have been based. Nor has C&D seen these documents. SPD simply failed to produce documents reflecting how many Product returns, if any, took place between March 2017 and August 2017.

SPD was obligated to produce both of the above categories of documents pursuant to Fed. R. Civ. P. 26 because either (1) SPD is attempting to use information from the documents at trial, or (2) SPD's expert is seeking to provide a damages-related opinion based on information that, if it exists, would be contained in documents. Fed. R. Civ. P. 26(a)(3) & 26(e)(1). On this basis alone, SPD should be precluded from proffering testimony (or any other evidence) regarding the alleged importance of ▮▮▮▮▮ and the alleged March 2017-August 2017 Product returns.

7

B.  *SPD's Failure to Produce Documents Responsive to C&D's Document Requests*

In addition to failing to satisfy its affirmative obligation under the rules requiring supplementation of initial disclosures to produce documents and information about the alleged "█████████ and Product returns, SPD also failed to satisfy its obligation to produce such documents in response to C&D's discovery requests. *See* Mervis Decl., Exs. C & D. A party that responds to a request for production is obligated to supplement or correct its disclosures, including supplementing its document production, in a timely manner if it learns that such disclosure was incomplete or incorrect. Fed. R. Civ. P. 26(e)(1). Once again, failure to properly disclose such information precludes use of that information at trial, unless the failure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1); *New World Sols., Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287, 310 (S.D.N.Y. 2015) (precluding use of documents where plaintiff offered "no convincing explanation" for its failure to produce in response to discovery requests); *Richmond*, 2012 U.S. Dist. LEXIS 32070, at *7 (precluding unproduced evidence of damages where defendant requested computation of damages and supporting documents during discovery); *Fund Comm'n Serv., II, v. Westpac Banking Co.*, 1996 U.S. Dist. LEXIS 11937, at *14 (S.D.N.Y. Aug. 15, 1996) (precluding expert testimony where plaintiff failed to provide expert discovery documents that were requested by defendant but were not produced).

As noted, C&D requested, and SPD agreed to produce, documents showing net profits for the Weeks Estimator, documents showing how SPD calculated such profits, and documents sufficient to calculate SPD's profits attributable to the Weeks Estimator. *Supra* at 4; Mervis Decl., Ex. C at 8, 10-11, 27-28; *id.*, Ex. D at 12-13. There is no conceivable justification for SPD's failure to produce information about any █████████ or alleged returns between March 2017 and August 2017, in accordance with its disclosure obligations. Allowing SPD to

8

rely on or criticize Dr. Bell for not considering this information at trial plainly would prejudice C&D since, *inter alia*, C&D has not had the opportunity to review and assess the underlying documents or to question SPD's witnesses about them during discovery. For this reason also, SPD should be precluded from proffering evidence regarding the alleged importance of ▇▇▇▇ ▇▇▇▇ and the alleged March 2017-August 2017 Product returns.

## CONCLUSION

For the foregoing reasons, C&D respectfully requests that the Court grant its motion to preclude SPD from offering testimony regarding (i) ▇▇▇▇▇▇▇ allegedly made between SPD and its contract counter-parties, and (ii) Product returns that allegedly took place between March 2017 and August 2017.

| | |
|---|---|
| Dated: October 9, 2017<br>New York, NY | By: /s/ Michael T. Mervis<br>**PROSKAUER ROSE LLP**<br>Richard M. Goldstein<br>Michael T. Mervis<br>Baldassare Vinti<br>Jeffrey H. Warshafsky<br>Q. Jennifer Yang<br>Eleven Times Square<br>New York, NY 10036<br>Tel. (212) 969-3000<br>Fax (212) 969-2900<br>rgoldstein@proskauer.com<br>mmervis@proskauer.com<br>bvinti@proskauer.com<br>jwarshafsky@proskauer.com<br>jyang@proskauer.com<br>Attorneys for Plaintiff<br>Church & Dwight Co., Inc. |

9