█████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████

### 3. Calculations Based Upon A Market Share Allocation Approach Isolating Lost Sales Caused By At-Issue Advertising <u>And Using A Correct Incremental Profit Margin</u>

83.  As described above, Dr. Bell's claimed lost profits calculation (a) failed to apportion lost profits only to those sales attributable to the at-issue advertising and (b)████████████

███████████████████████████████████████████████

███████████████████████████████████████  The impact

on C&D's claimed lost profits from these decisions made by Dr. Bell can be demonstrated through

an adjustment to Dr. Bell's calculations that account for these flaws (i.e., by apportioning Weeks

Estimator sales using the results from the Poret Survey and ████████████████████████

███████

███████████████████████████████████

███████████████████████████████████.

Highly Confidential - Attorneys' Eyes Only (C&D)



86. The results of these adjustments to Dr. Bell's lost profits calculation are contained in **Table 8** below, with highlighted rows representing the adjustments (i.e., (a) apportioning lost sales to the at-issue advertising and (b) ███████████████████████



Highly Confidential - Attorneys' Eyes Only (C&D)



### 4. Additional Evidence Demonstrates That This Lost Profits Measure Is A Conservatively High Estimate Of C&D's Lost Profits

87.    A market share allocation approach as presented above calculates lost sales in an amount proportional to First Response's market share rather than assuming all Weeks Estimator sales attributable to the at-issue advertising would have gone to First Response. This calculation is consistent with deposition testimony from Ms. Bishop, who testified that had Weeks Estimator not been produced, some of its historical sales could have gone to other participants in the market and not all of them would have gone to First Response.[264]

88.    However, additional evidence suggests that the lost profits calculations presented immediately above are conservatively high measures of the impact of the at-issue



Highly Confidential - Attorneys' Eyes Only (C&D)

advertising on First Response profits.  For example, a market share allocation such as the approach used by Dr. Bell (and in the adjusted calculation presented above) would not take into account



Highly Confidential - Attorneys' Eyes Only (C&D)



89.  In an attempt to demonstrate that the assumptions underlying Dr. Bell's market share allocation approach were correct, Dr. Bell submitted results from three regression analyses.[270] Dr. Bell concluded from these that his market share allocation approach is conservative.[271] However, Dr. Bell's regression analysis suffers from numerous flaws, rendering such a conclusion inappropriate and unreliable.[272]  In fact, because of the numerous flaws and limitations, no reliable conclusion can be drawn from Dr. Bell's regression analysis.

90.  In light of (a) the evidence presented in **Section IX** regarding various factors and market events that affected First Response's sales over the damages period and (b)

█████████████████████████████████████████████████████████████

███████, the calculations presented above under the market share allocation approach likely overstate the impact of Weeks Estimator on First Response sales.  Therefore, the lost profits

---

[270] Dr. Bell did not use the regressions to determine the claimed lost profits figure.  Rather, Dr. Bell only used the regressions to claim that a market share allocation approach is conservative.  Dr. Bell used two of these regressions to attempt to demonstrate that First Response lost sales in an amount at least proportionate to its relative market share:  (a) an original regression analysis (Bell Direct Testimony at 12 and Appendix F) and (b) an augmented regression (Bell Direct Testimony at 13 and Appendix G). Dr. Bell used the third regression to attempt to demonstrate that the presence of the Weeks Estimator did not lead to growth in the market (Bell Direct Testimony at 13 – 14 and Appendix H).

[271] Bell Direct Testimony at 13 – 14.

[272] A detailed discussion of the flaws contained in Dr. Bell's regression analyses and the implications of those flaws in contained in the **Appendix**.

Highly Confidential - Attorneys' Eyes Only (C&D) (n.270 only)

damages of ███████ represent a conservatively high measure of First Response's lost profit damages.

**B.** ███████████████████████████████████████

91. Although the lost profits measure based upon the market share allocation approach above represents my primary approach to determine lost profits damages in this matter, alternative calculations of First Response's lost sales (and hence lost profits) caused by the at-issue advertising can be performed ███████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████ ██████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████████

███████████████████ ██████████████████████████

████████████████████████████████████ ████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

────────────────────

■ ███████████████████████████████

■ ████████████████████████

■ ████████████████████████████

Highly Confidential - Attorneys' Eyes Only (C&D)



94.  Over the damages period from the week ending August 10, 2013 to the week ending November 19, 2016, lost profits can be evaluated by multiplying the following components: (a) ███████████████████████████████████████████████████████ ██████████████████████████ (b) the number of weeks in the relevant damages period that the Weeks Estimator was available;[280] and (c) a factor to apportion sales of

The Weeks Estimator stopped shipping on September 12, 2016 and was formally withdrawn from the market on November 16, 2016. Wood Direct Testimony at ¶ 20.  November 19, 2016 represents the end date of the week in Nielsen data that contains the date

Highly Confidential - Attorneys' Eyes Only (C&D)

the Weeks Estimator to the sales attributable to the at-issue advertising (e.g., 21.9% for the launch package and 17.3% for the revised package). █████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████

### C.  Calculations Based Upon First Response Sales During Period Weeks Estimator Was Unavailable

█████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████   █████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

96.  Following the liability portion of this litigation, SPD stopped shipments of the Weeks Estimator product between July 1, 2015 and September 1, 2015.[282]  The Weeks Estimator resumed shipments for approximately a year.[283] ████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

---

that the Weeks Estimator was formally withdrawn from the market. ███████████████████

███████████████████████████████████

██  ███████████████████████████████████████

[282]  Wood Direct Testimony at ¶ 19.

[283]  SPD stopped shipments of the Weeks Estimator on September 12, 2016 and the product was formally withdrawn from the market on November 16, 2016.  Wood Direct Testimony at ¶ 20.

Highly Confidential - Attorneys' Eyes Only (C&D)

████ ████████████████████████████████████ This period with significantly

reduced sales of the Weeks Estimator represents a period after the launch of the Weeks Estimator

during which First Response's sales effectively were not affected by competition with the Weeks

Estimator.  Hence, this period can be used to evaluate the general market effects of the Weeks

Estimator on First Response products by comparing First Response sales between this period and

an otherwise reasonably comparable period during which the Weeks Estimator was available for

consumer purchase.



Confidential (Table 9 only)
Highly Confidential - Attorneys' Eyes Only (C&D) (¶97 and notes only)





Highly Confidential - Attorneys' Eyes Only (C&D)

██████

██████████████████████████

| | Weekly Retail Dollar Sales | |
|---|---|---|
| | (Jul 5, 2015 − Oct 3, 2015) | (Jul 3, 2016 − Oct 1, 2016) |
| ████ | ████ | ████ |
| ████ | ████ | ████ |
| ████ | ████ | ████ |
| ████ | ████ | ████ |
| ████ | ████ | ████ |
| ████ | ████ | ████ |
| ████ | ████ | ████ |
| ████ | ████ | ████ |
| ████ | ████ | ████ |
| ████ | ████ | ████ |
| ████ | ████ | ████ |
| ████ | ████ | ████ |
| ██████ | ██████ | ██████ |
| ████████ | ██████ | |
| ████████ | ██ | |

████████████████████████████████

████████████████████████████████

█████████████████████████████████████████ ██ ████

██████████████████████████████████

█████████████████████████████████

██████ ████ █████████████████████████████████████

██████████████████████████████

────────────────────

██ ████████████████████████████████████████
   ██████

██ ████████████████████████████████████████
   ████████████████████████████████████████
   ████████████████████████████

██ ████████████████ ██ █████

Highly Confidential - Attorneys' Eyes Only (C&D)



Highly Confidential - Attorneys' Eyes Only (C&D)



102. It should be noted that the lost profits calculation above overstates C&D's losses. Specifically, while the Weeks Estimator was off the market in Q3 2015, ███████████, simple comparisons of First Response sales between (a) the period that the Weeks Estimator was not being shipped and (b) periods that the Weeks Estimator was available to consumers would overstate the impact of the Weeks Estimator generally (and the at-issue advertising specifically) on First Response sales.[297] First Response sales increases during the periods that the Weeks Estimator was unavailable would conflate the competitive pressures that First Response may have faced from the Weeks Estimator with the effects of ███████ and hence would not isolate the impact of the Weeks Estimator on First Response sales.

- 85 –

### D. <u>Summary Of Lost Profits Damages</u>

103. Under the market share allocation approach (i.e., the primary approach), C&D's lost profits attributable to the at-issue advertisements are approximately ███████. Under the two alternative approaches, C&D's lost profits attributable to the at-issue advertisements are approximately ███████████. Each of these calculations was conducted under the assumption that all of the measures of lost sales isolate the effect of the at-issue advertising. In other words, generally these calculations did not consider the additional dynamics and general sales fluctuations and variability in the marketplace that were discussed in **Section IX**.[298] However, the evidence set forth in **Section IX** regarding economic causation demonstrates that these calculations likely overstate the effect of the at-issue advertising and hence the measures of lost profits presented herein are conservatively high.

I declare under the penalty of perjury that the foregoing is true and correct. Executed this 15th day of September, 2017, in Dallas, Texas.

Keith R. Ugone

Keith R. Ugone, Ph.D.



- 86 –

Highly Confidential - Attorneys' Eyes Only (C&D)

**Demonstrative, Ugone Exhibit 1**

# Facts, Data, and Other Information Considered

| Description | Bates Prefix | Start | End |
| --- | --- | --- | --- |

### Legal Documents

Church & Dwight Co., Inc.'s 30(b)(6) Notice of Deposition to SPD Swiss Precision Diagnostics GmbH dated December 27, 2017

Church & Dwight Co., Inc.'s Responses and Objections To SPD Swiss Precision Diagnostics, GmbH's Third Set of Interrogatories

Court Order of August 6, 2015 Denying Motion to Stay of Damages Phase Pending Appeal

Declaration of Ryan Daly In Support of SPD Swiss Precision Diagnostics GmbH's Opposition to Church & Dwight Co., Inc.'s Motion To hold SPD In Contempt and For Other Relief dated January 24, 2017

Defendant SPD Swiss Precision Diagnostics GmbH's Notice of Taking Rule 30(b)(6) Deposition of Church & Dwight Co., Inc. dated July 21, 2014

Defendant SPD Swiss Precision Diagnostics GmbH's Supplemental Federal Rule of Civil Procedure 26(a)(1) Disclosures dated March 3, 2017

Memorandum & Order for Denying Church & Dwight's Motion and SPD's Sealing Application Denied dated July 26, 2017 by US District Judge Alison J. Nathan

Opinion & Order filed July 1, 2015

Permanent Injunction Order filed August 26, 2015

SPD Swiss Precision Diagnostics GmbH's Rule 30(b)(6) Notice of Deposition to Church & Dwight Co., Inc. dated January 12, 2017

Subpoena to Testify at a Deposition in a Civil Action to Taylor Hoel dated May 15, 2017

### Deposition Transcripts

30(b)(6) Deposition of Deborah Krall taken February 21, 2017 and Associated Exhibits (Exhibits Listed Separately)

30(b)(6) Deposition of Wendy Bishop taken February 22, 2017 and Associated Exhibits (Exhibits Listed Separately)

Deposition of Cristobal Montero taken February 16, 2017 and Associated Exhibits (Exhibits Listed Separately)

Deposition of Dr. Tulin Erdem taken May 11, 2017

Deposition of Gregory K. Bell, Ph.D., taken May 3, 2017

Deposition of Keith R. Ugone, Ph.D., taken May 10, 2017

Deposition of Leah Wood Miramonti taken April 5, 2017 and Associated Exhibits (Exhibits Listed Separately)

Deposition of Ryan M. Daly taken February 10, 2017 Associated Exhibits (Exhibits Listed Separately)

Deposition of Simon Alaluf taken April 11, 2017 and Associated Exhibit (Exhibit Listed Separately)

Deposition of Stacey Feldman taken October 2, 2014 and Associated Exhibits (Exhibits Listed Separately)

Deposition of Taylor W. Hoel taken May 16, 2017 and Associated Exhibits (Listed Separately)

Deposition of Timothy Snowden taken August 27, 2014 and Select Associated Exhibits (Exhibits Listed Separately)

# Facts, Data, and Other Information Considered

| Description | Bates Prefix | Start | End |
| --- | --- | --- | --- |

## Deposition Exhibits

Alaluf Deposition Exhibit 1: Ugone Report Appendix A

Bishop Deposition Exhibit 45 : Church & Dwight Co. Inc. FQ3 2013 Earnings Call Transcript, November 1, 2013

Bishop Deposition Exhibit 46: Church & Dwight Co. Inc. FQ4 2013 Earnings Call Transcript, February 4, 2014

Bishop Deposition Exhibit 47: Church & Dwight Co. Inc. Q3 2015 Earnings Call Transcript, November 2, 2015

Bishop Deposition Exhibit 48: Church & Dwight Co. Inc. Q4 2014 Earnings Call Transcript, February 3, 2015

Bishop Deposition Exhibit 49: Church & Dwight Co. Inc. Q2 2014 Earnings Call Transcript, August 1, 2014

Bishop Deposition Exhibit 50: Church & Dwight Co. Inc. Q1 2015 Earnings Call Transcript, May 7, 2015

Bishop Deposition Exhibit 51: Church & Dwight Co. Inc. Q2 2015 Earnings Call Transcript, August 4, 2015

Daly Deposition Exhibit 2: January 12, 2017 Email from Harold P. Weinberger to Michael T. Mervis regarding Church & Dwight v. SPD

Deposition of Hal Poret taken May 11, 2017 and Associated Exhibits (Listed Separately)

Feldman Deposition Exhibit 2: Declaration of Stacey Feldman in Support of Plaintiff's Motion for a Preliminary Injunction

Feldman Deposition Exhibit 6: Clearblue Package Image

Feldman Deposition Exhibit 7: Clearblue Package Image

Feldman Deposition Exhibit 8: November 20, 2012 Email from Sarah Johnson to Denise Johnson-Lyles regarding Preview of Response to Section 3b Received Nov 8 With Attached k112870 5001 - SPD Response to FDA comments 11- 8- 12.docx; 510k_summary.docx; INDICATIONS FOR USE FORM OIR.docx; CB Carton VR3 Rear portrait Full size copy.pdf; CB Carton VR3 Front Full size copy.pdf; leaflet actual size instructions copy.pdf; leaflet actual size Q and A copy.pdf

Hoel Deposition Exhibit 2: Taylor Hoel LinkedIn Profile

Hoel Deposition Exhibit 9: P&G, U.S.'s Largest Advertiser, Is Putting Its North American Media Business in Review dated May 15, 2015 (www.adweek.com)

Miramonti Deposition Exhibit 03: Ugone Report Appendix C

Miramonti Deposition Exhibit 04: Ugone Report Appendix E

Miramonti Deposition Exhibit 07: Ugone Report Appendix G

Miramonti Deposition Exhibit 08: Ugone Report Appendix I

Miramonti Deposition Exhibit 12: Ugone Report Appendix M

Miramonti Deposition Exhibit 13: YouTube: Discover Clearblue Digital Pregnancy Test with Weeks Indicator (UK version)

Miramonti Deposition Exhibit 15: Ugone Report Appendix B

Miramonti Deposition Exhibit 16: Ugone Report Appendix L

Highly Confidential – Attorneys' Eyes Only

# Facts, Data, and Other Information Considered

| Description | Bates Prefix | Start | End |
|---|---|---|---|
| Miramonti Deposition Exhibit 17: Ugone Report Appendix D | | | |
| Poret Deposition Exhibit 3: Harvard Business School: Concept Testing, Revised 3/23/92 | | | |
| Poret Deposition Exhibit 4: Expert Report of Keith R. Ugone date March 24, 2017 | | | |
| Poret Deposition Exhibit 5: Rebuttal Testimony of Hal Poret dated February 25, 2015 | | | |
| Poret Deposition Exhibit 7: Opinion & Order for a Proposed Permanent Injunction dated July 1, 2015 by US District Judge Alison J. Nathan | | | |
| Poret Deposition Exhibit 9: Permanent Injunction Order dated August 26, 2015 by US District Judge Alison J. Nathan | | | |
| Bishop Deposition Exhibit 38: Nielsen Data | DTX | 183 | 183 |
| Miramonti Deposition Exhibit 05: Various Leo Burnett Scheduling Forms for Procter & Gamble | SPD-NY-D | 041500 | 041517 |
| Miramonti Deposition Exhibit 06: FY14/15 Traffic Sheet | SPD-NY-D | 041518 | 041527 |

### Testimony and Trial Exhibits from Liability Phase

| Description | Bates Prefix | Start | End |
|---|---|---|---|
| Direct Testimony Declaration of Joel H. Steckel, Ph.D. dated February 17, 2015 and Associated Exhibits | | | |
| Direct Testimony of Cristobal Montero dated February 16, 2015 | | | |
| Direct Testimony of Dr. Alan J. Cox dated February 17, 2015 and Associated Exhibits | | | |
| Direct Testimony of Dr. Tulin Erdem and dated February 3, 2015 Associated Exhibits | | | |
| Direct Testimony of Hal Poret dated February 3, 2015 and Associated Exhibits | | | |
| Direct Testimony of Kirsten Suarez dated February 17, 2015 and Associated Exhibits | | | |
| Direct Testimony of Ryan Daly dated February 17, 2015 and Associated Exhibits | | | |
| Direct Testimony of Stacey Feldman dated February 3, 2015 and Associated Exhibits | | | |
| Rebuttal Testimony of Dr. Tulin Erdem dated February 25, 2015 and Associated Exhibits | | | |
| Rebuttal Testimony of Stacey Feldman dated February 25, 2015 and Associated Exhibits | | | |
| DTX 072 F02698-E0033-00082321.xlsx | DTX | 072 | 072 |
| First Response Share of Shelf Opportunity Analysis Presentation | DTX | 078 | 078 |
| Market Data: xAOC (DTX 095 F02698-E0033-00067534.xlsx) | DTX | 095 | 095 |

### Testimony and Trial Exhibits from Damages Phase

| Description | Bates Prefix | Start | End |
|---|---|---|---|
| Direct Testimony of Cristobal Montero dated September 14, 2017 and Associated Demonstratives | | | |
| Direct Testimony of Deborah Krall dated August 24, 2017 | | | |
| Direct Testimony of Douglas E. Schoen dated September 7, 2017 | | | |
| Direct Testimony of Gregory K. Bell dated August 25, 2017 and Appendices | | | |

# Facts, Data, and Other Information Considered

| Description | Bates Prefix | Start | End |
|---|---|---|---|
| Direct Testimony of Leah Wood Miramonti dated September 12, 2017 and Associated Demonstratives | | | |
| Direct Testimony of Simon Alaluf dated September 11, 2017 and Associated Demonstratives | | | |
| Direct Testimony of Taylor Hoel dated September 13, 2017 | | | |
| Direct Testimony of Wendy Bishop dated August 18, 2017 | | | |

### Expert Reports and Associated Documentation

| Description | Bates Prefix | Start | End |
|---|---|---|---|
| Damages Rebuttal Expert Report of Dr. Tulin Erdem dated April 21, 2017 | | | |
| Expert Report of Gregory K. Bell, Ph.D., dated March 24, 2017 and Supporting Regression Documentation | | | |
| Expert Report of Hal Poret in Matter of Church & Dwight v. SPD Swiss Precision Diagnostics dated April 21, 2017 | | | |
| Expert Report of Hal Poret in Matter of Church & Dwight v. SPD Swiss Precision Diagnostics: Survey to Determine Consumer Perception regarding Clearblue Advanced Pregnancy Test with Weeks Estimator dated December 1, 2014 and Associated Documentation | | | |
| Expert Report of Keith R. Ugone, Ph.D. dated March 24, 2017 | | | |
| Expert Report: Pregnancy Test Product Study by Douglas E. Schoen dated March 21, 2017 | | | |
| Letter from Gregory K. Bell to Michael T. Mervis dated April 20, 2017 correcting an error in the Bell Report dated March 24, 2017 | | | |
| Pregnancy Test Kit Survey by ORC International, August 2014 (Part of Poret Survey) | | | |
| Rebuttal Expert Report of Gregory K. Bell, Ph.D., dated April 21, 2017 and Supporting Regression Documentation | | | |
| Rebuttal Expert Report of Keith R. Ugone, Ph.D. dated April 21, 2017 | | | |
| Rebuttal Report of Alan J. Cox, Ph.D. dated December 15, 2014 | | | |
| Report of Alan J. Cox, Ph.D. dated December 1, 2014 | | | |

### Documents Produced by Church & Dwight

| Description | Bates Prefix | Start | End |
|---|---|---|---|
| | CHD | 00000056 | 00000056 |
| | CHD | 00000075 | 00000075 |
| | CHD | 00000094 | 00000094 |
| | CHD | 00000113 | 00000113 |
| | CHD | 00000130 | 00000132 |
| | CHD | 00000396 | 00000400 |
| | CHD | 00000416 | 00000418 |
| | CHD | 00000421 | 00000423 |

# Facts, Data, and Other Information Considered

| Description | Bates Prefix | Start | End |
|---|---|---|---|
| | CHD | 00000436 | 00000438 |
| | CHD | 00000440 | 00000442 |
| | CHD | 00000475 | 00000475 |
| | CHD | 00000519 | 00000519 |
| | CHD | 00000536 | 00000536 |
| | CHD | 00000555 | 00000555 |
| | CHD | 00000558 | 00000560 |
| | CHD | 00000562 | 00000564 |
| | CHD | 00000573 | 00000575 |
| | CHD | 00000579 | 00000582 |
| | CHD | 00000607 | 00000609 |
| | CHD | 00000672 | 00000674 |
| | CHD | 00000705 | 00000707 |
| | CHD | 00000730 | 00000730 |
| | CHD | 00000731 | 00000731 |
| | CHD | 00000770 | 00000770 |
| | CHD | 00000874 | 00000874 |
| | CHD | 00001021 | 00001021 |
| | CHD | 00001046 | 00001048 |
| | CHD | 00001050 | 00001052 |
| | CHD | 00001306 | 00001306 |
| | CHD | 00001378 | 00001378 |
| | CHD | 00001500 | 00001500 |
| | CHD | 00001546 | 00001546 |

# Facts, Data, and Other Information Considered

| Description | Bates Prefix | Start | End |
|---|---|---|---|
| | CHD | 00001660 | 00001663 |
| | CHD | 00001664 | 00001667 |
| | CHD | 00001871 | 00001873 |
| | CHD | 00001893 | 00001895 |
| | CHD | 00001901 | 00001903 |
| | CHD | 00001970 | 00001975 |
| | CHD | 00002280 | 00002282 |
| | CHD | 00002302 | 00002302 |
| | CHD | 00002303 | 00002305 |
| | CHD | 00002322 | 00002322 |
| | CHD | 00002323 | 00002328 |
| | CHD | 00002369 | 00002369 |
| | CHD | 00002389 | 00002389 |
| | CHD | 00002390 | 00002393 |
| | CHD | 00002404 | 00002408 |
| | CHD | 00002437 | 00002437 |
| | CHD | 00002482 | 00002483 |
| | CHD | 00002491 | 00002491 |
| | CHD | 00002493 | 00002493 |
| | CHD | 00002536 | 00002536 |
| | CHD | 00002541 | 00002543 |
| | CHD | 00002577 | 00002577 |
| | CHD | 00002624 | 00002625 |
| | CHD | 00002628 | 00002629 |
| | CHD | 00002637 | 00002637 |

# Facts, Data, and Other Information Considered

| Description | Bates Prefix | Start | End |
|---|---|---|---|
| | CHD | 00002695 | 00002695 |
| | CHD | 00002796 | 00002796 |
| | CHD | 00002917 | 00002917 |
| | CHD | 00002956 | 00002956 |
| | CHD | 00002998 | 00002998 |
| | CHD | 00003033 | 00003033 |
| | CHD | 00003054 | 00003054 |
| | CHD | 00003105 | 00003105 |
| | CHD | 00003151 | 00003151 |
| | CHD | 00003161 | 00003163 |
| | CHD | 00003214 | 00003216 |
| | CHD | 00003219 | 00003221 |
| | CHD | 00003224 | 00003226 |
| | CHD | 00003247 | 00003247 |
| | CHD | 00003250 | 00003252 |
| | CHD | 00003256 | 00003258 |
| | CHD | 00003355 | 00003357 |
| | CHD | 00003424 | 00003424 |
| | CHD | 00003541 | 00003541 |
| | CHD | 00003795 | 00003795 |
| | CHD | 00003820 | 00003821 |
| | CHD | 00003834 | 00003837 |
| | CHD | 00003840 | 00003840 |
| | CHD | 00003841 | 00003848 |
| | CHD | 00003900 | 00003900 |
| | CHD | 00003963 | 00003963 |

# Facts, Data, and Other Information Considered

| Description | Bates Prefix | Start | End |
|---|---|---|---|
| | CHD | 00004051 | 00004052 |
| | CHD | 00005502 | 00005528 |
| | CHD | 00005657 | 00005659 |
| | CHD | 00006197 | 00006199 |
| | CHD | 00006332 | 00006368 |
| | CHD | 00006467 | 00006680 |
| | CHD | 00007380 | 00007380 |
| | CHD | 00007570 | 00007572 |
| | CHD | 00008045 | 00008047 |
| | CHD | 00008648 | 00008649 |
| | CHD | 00008650 | 00008662 |
| | CHD | 00008663 | 00008664 |
| | CHD | 00008665 | 00008677 |
| | CHD | 00008678 | 00008678 |
| | CHD | 00008679 | 00008681 |
| | CHD | 00008682 | 00008682 |
| | CHD | 00008683 | 00008685 |
| | CHD | 00008686 | 00008687 |
| | CHD | 00008688 | 00008699 |
| | CHD | 00008700 | 00008701 |
| | CHD | 00008702 | 00008713 |
| | CHD | 00008714 | 00008714 |
| | CHD | 00008715 | 00008717 |

# Facts, Data, and Other Information Considered

| Description | Bates Prefix | Start | End |
| --- | --- | --- | --- |
| | CHD | 00008718 | 00008719 |
| | CHD | 00008720 | 00008722 |
| | CHD | 00008723 | 00008724 |
| | CHD | 00008725 | 00008727 |
| | CHD | 00008728 | 00008733 |
| | CHD | 00008734 | 00008740 |
| | CHD | 00008741 | 00008747 |
| | CHD | 00008748 | 00008753 |
| | CHD | 00008754 | 00008756 |
| | CHD | 00008757 | 00008761 |
| | CHD | 00008762 | 00008764 |
| | CHD | 00008765 | 00008769 |
| | CHD | 00008770 | 00008772 |
| | CHD | 00008773 | 00008774 |
| | CHD | 00008775 | 00008777 |
| | CHD | 00008778 | 00008778 |
| | CHD | 00008779 | 00008784 |
| | CHD | 00008785 | 00008787 |
| | CHD | 00008788 | 00008788 |
| | CHD | 00008789 | 00008789 |
| | CHD | 00008790 | 00008790 |
| | CHD | 00008791 | 00008791 |
| | CHD | 00008792 | 00008792 |
| | CHD | 00008793 | 00008793 |
| | CHD | 00008794 | 00008794 |
| | CHD | 00008795 | 00008795 |
| | CHD | 00008796 | 00008796 |
| | CHD | 00008797 | 00008797 |

Highly Confidential – Attorneys' Eyes Only

# Facts, Data, and Other Information Considered

| Description | Bates Prefix | Start | End |
| --- | --- | --- | --- |
| | CHD | 00008798 | 00008798 |
| | CHD | 00008799 | 00008799 |
| | CHD | 00008800 | 00008800 |
| | CHD | 00008801 | 00008801 |
| | CHD | 00008802 | 00008802 |
| | CHD | 00008803 | 00008803 |
| | CHD | 00008804 | 00008804 |
| | CHD | 00008805 | 00008805 |
| | CHD | 00008806 | 00008806 |
| | CHD | 00008807 | 00008807 |
| | CHD | 00008808 | 00008808 |
| | CHD | 00008809 | 00008809 |
| | CHD | 00008810 | 00008810 |
| | CHD | 00008811 | 00008811 |
| | CHD | 00008812 | 00008812 |
| | CHD | 00008813 | 00008813 |
| | CHD | 00008814 | 00008814 |
| | CHD | 00008815 | 00008815 |
| | CHD | 00008816 | 00008816 |
| | CHD | 00008817 | 00008817 |
| | CHD | 00008818 | 00008818 |
| | CHD | 00008819 | 00008819 |
| | CHD | 00008820 | 00008820 |
| | CHD | 00008821 | 00008821 |
| | CHD | 00008822 | 00008822 |
| | CHD | 00008823 | 00008823 |
| | CHD | 00008824 | 00008824 |
| | CHD | 00008825 | 00008825 |