USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: DEC 0 1 2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Church & Dwight Co., Inc.,

Plaintiff,

–v–

SPD Swiss Precision Diagnostics GmbH,

Defendant.

14-CV-585 (AJN)

ORDER

ALISON J. NATHAN, District Judge:

The above-captioned matter is scheduled for a bench trial commencing December 11, 2017 to determine damages following the Court's earlier finding of liability. The Court is in receipt of three motions from the Plaintiff Church & Dwight Co., Inc. ("C&D" or "Plaintiff"), seeking to exclude certain testimony pursuant to Federal Rules of Civil Procedure 26 and 37, Federal Rules of Evidence 701-702 and 401-403, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See* Dkt. Nos. 503, 506, & 509. Defendant SPD Swiss Precision Diagnostics GmbH ("SPD" or "Defendant") also filed two motions seeking to exclude the testimony of two experts under Federal Rule of Evidence 702 and *Daubert*. *See* Dkt. Nos. 497, 500. The Court addresses these five motions below.

Additionally, the parties have filed numerous redaction requests in conjunction with the above motions, *see* Dkt. Nos. 496, 514, 517, & 528, their joint pretrial report and direct and rebuttal testimony, *see* Dkt. No. 537, and their proposed findings of fact, conclusions of law, and pretrial memorandum of law, *see* Dkt. No. 550. The Court also addresses these sealing requests.

## I. Motions *in Limine*

### a. The Court Reserves Judgment on the Bell, Erdem, Ugone, and Economic Causation Motions

With respect to the parties' *Daubert* motions to fully or partially exclude the testimony of C&D's experts, Dr. Gregory Bell and Dr. Tulin Erdem, and SPD's expert, Dr. Keith R. Ugone, *see* Dkt. Nos. 497, 500, & 506, the Court has determined that it will reserve judgment, permit the challenged evidence to be admitted at trial subject as appropriate to the opportunity for cross-examination, and "deci[de] after the evidence is presented whether it deserves to be credited by meeting the requirements of *Daubert* and its progeny." *Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 457, 457 n.1 (S.D.N.Y. 2007) (noting that, "[i]n the context of a bench trial where there is not a concern for juror confusion or potential prejudice, the court has considerable discretion in admitting the proffered testimony" and making any necessary *Daubert* determinations thereafter).

Similarly, the Court will reserve judgment with respect to C&D's motion to preclude "irrelevant" testimony and evidence regarding "economic causation." *See* Dkt. No. 509.

**b. The Court Grants C&D's Motion to Preclude Testimony on Information Not Produced in Discovery**

However, the Court will decide now, and GRANTS, C&D's motion to preclude any testimony or evidence regarding information not produced in discovery for the reasons that follow. For the purposes of this motion, the Court will not engage in extensive factual recitation, and instead relies on the parties' familiarity with the procedural history and factual background of this case.

In brief, SPD contracted for the purchase of manufactured pregnancy test sticks from one partner at a contractually-agreed price, and for the subsequent sale of those sticks to another partner at a contractually-agreed price. *See* Declaration of Michael T. Mervis in Support of Motion to Preclude Testimony Regarding Information Not Produced in Discovery ("Mervis Decl."), Ex. A (Direct Testimony of Cristobal Montero ("Montero DT")) ¶ 7. In calculating SPD's profits available for disgorgement, C&D's expert, Dr. Gregory Bell, used these contractually-agreed prices. In his direct testimony, Cristobal Montero, SPD's Chief Financial Officer, mentions that SPD pays "true-up payments" intended to ensure that each contracting

party earns a contractually specified profit margin. *Id.* ¶ 15. SPD never produced any data or documents regarding the existence or amount of these alleged "true up" payments, and Montero does not testify that SPD made or received any such payments during the relevant time, nor offer the amount of any such payments.

Nonetheless, despite not producing this information to C&D, SPD's expert, Dr. Keith R. Ugone, criticizes Dr. Bell's use of the contractually-agreed prices to determine SPD's profits because these prices do not take into account any "true up" payments that were made. *See* Mervis Decl., Ex. B (Direct Testimony of Dr. Keith R. Ugone ("Ugone DT")) ¶ 56(b)(iii).

Similarly, Dr. Ugone suggests that Dr. Bell's calculation should have accounted for returns of the Clearblue Weeks Estimator product made to SPD. *Id.* n. 8. Dr. Ugone relies on Montero's testimony for the number of returns made during the period of March to August 2017. *Id.* (citing Montero DT ¶ 34). In turn, Montero does not cite any supporting documentary evidence for this number, and SPD did not produce any documents to C&D that provide evidence that returns were made during this period, let alone the specific number.

C&D moves to preclude any testimony or evidence related to returns based on Federal Rule of Civil Procedure 26(a)(3), which requires the disclosure of all evidence a party expects to present at trial, and Rule 37(c)(1), which bars a party from using evidence at a trial that it failed to disclose under Rule 26(a).

With respect to the "true up" information, SPD argues that Mr. Montero's testimony regarding the payments, and Dr. Ugone's criticism of Dr. Bell's calculation "has nothing to do with specific true-up data." Dkt. No. 515 at 4. That is, SPD only raises the existence of the true up payments to argue that Dr. Bell's use of the transfer price accounting method is inappropriate. *Id.* at 2-4. Moreover, SPD does not maintain records of true-up payments by product, and so even if the data were produced, Dr. Bell would not have been able to apply it to a Weeks Estimator profit analysis. *Id.* at 3.

Nonetheless, even if the true-up data shows exactly what Mr. Montero claims it does, and if the Court accepts SPD's original justification for withholding the production of that data, *see*

Dkt. No. 515 at 5 n.4, SPD still cannot use the existence of a type of payment for which no documentary evidence was produced in order to criticize Dr. Bell's choice of disgorgement calculation. As C&D notes in its reply to demonstrate the hypothetical utility of such documents, as there is no evidence in the record of the amount of any true-up payments, it is possible that the payment amounts are so insignificant as to have no meaningful impact on Dr. Bell's damages calculation. Dkt. No. 534 at 3. Consequently, were SPD to criticize Dr. Bell's calculations at trial on this basis, the fact that SPD never produced any information about the nature and extent of these payments would prejudice C&D's ability to rebut such criticisms. SPD may still criticize Dr. Bell's methodology as inappropriate for calculating all relevant costs at a product level, but any testimony or other evidence of the existence and nature of true-up payments at trial is precluded by Rules 26 and 37.

As with the true-up payments, SPD argues that C&D's motion to preclude testimony and evidence about returns is an "argument about nothing," because Dr. Ugone only mentions the returns in a footnote "to demonstrate the conservative nature of his calculations." Dkt. No. 515 at 6. The returns do not impact his disgorgement analysis not does he criticize Dr. Bell for failing to account for them. *Id.*

True as this may be, Dr. Ugone's use of a particular number of returns, to which Mr. Montero attests but for which no documents have been produced, even if simply to bolster his claim that his calculation is conservative, is still impermissible under the Federal Rules of Civil Procedure. Accordingly, testimony or evidence of these returns is precluded.

## II. Sealing Requests

Pursuant to the Court's Individual Rules 1.B and 4.A, the parties each e-mailed applications to redact various documents submitted. *See* Dkt. Nos. 496 (opening briefing on motions *in limine*), 514 & 517 (opposition to motions *in limine*), 528 (reply briefs for motions *in limine*), 537 (joint pretrial report and direct and rebuttal testimony), and 550 (proposed findings of fact and conclusions of law and pretrial memorandum of law).

These applications comport with the applicable standard in this Circuit for filing under seal – articulated in *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-120 (2d Cir. 2006) – and are appropriate.

The subject documents are clearly "judicial documents" because they constitute portions of the parties' briefing on motions *in limine* or other trial-related submissions, and are "'relevant to the performance of the judicial function and useful in the judicial process.'" *United States v. Erie Cty., N.Y.*, 763 F.3d 235, 240 (2d Cir. 2014) (quoting *Lugosch*, 435 F.3d at 119). Thus, such documents receive a presumption of public access rooted in both the common law and the First Amendment. *Lugosch*, 425 F.23d at 119-20. Nonetheless, that presumption here is outweighed by "competing considerations." *Id.*; *see also In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987) ("[D]ocuments may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." (internal quotation marks omitted)).

In this case, the materials that each party seeks leave to redact concern proprietary and sensitive information related to non-public financial information, marketing strategies, the parties' supply chains, relationships between the parties and their affiliates or third-party vendors, and other sensitive data. Additionally, the parties jointly seek leave to redact information that references data from the Nielsen Company that both parties are contractually-obligated to treat as confidential under the terms of the Stipulated Protective Order in this case. Dkt. No. 36.

Upon review, the Court agrees that these documents contain information of a nature such that the proposed redactions are necessary to protect the parties from being placed in an unfair competitive position, or from harming their relationships with vendors, and that this outweighs the presumption of public access. The requests are narrowly tailored to achieve their aim of preserving confidentiality.

The Court hereby GRANTS the parties' applications, and will maintain the unredacted pages under SEAL.

## III. Conclusion

For the foregoing reasons, the Court GRANTS C&D's motion to preclude testimony and evidence related to information not produced in discovery to the extent discussed above, reserves judgment on the other four motions *in limine*, and GRANTS the parties' applications for redactions of their recent submissions.

This Order resolves Dkt. Nos. 496, 503, 514, 517, 528, 537, & 550. This Order does not resolve Dkt. Nos. 497, 500, 506, & 509.

SO ORDERED.

Dated: November 30, 2017
New York, New York

ALISON J. NATHAN
United States District Judge