**PROSKAUER ROSE LLP**
Richard M. Goldstein (RG 8329)
Michael T. Mervis (MM 0306)
Baldassare Vinti (BV 0080)
Jeffrey H. Warshafsky (JW 3035)
Eleven Times Square
New York, NY 10036
Tel: 212.969.3000
Fax: 212.969.2900

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

CHURCH & DWIGHT CO., INC.,

Plaintiff,

v.

SPD SWISS PRECISION DIAGNOSTICS, GMBH,

Defendant.

Civil Action No. 1:14 CV 585 (AJN)

**CHURCH & DWIGHT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO REOPEN THE TRIAL RECORD ON DAMAGES**

Church & Dwight respectfully moves to reopen the record of the trial on damages for the limited purpose of introducing new evidence of continued public display of advertising for the Clearblue Advanced Pregnancy Test with Weeks Estimator (the "Product" or the "Weeks Estimator"). This evidence directly bears on the issues of the lingering impact of SPD's false advertising and the need for deterrence.

On March 13, 2018, Church & Dwight's Marketing Director for First Response, Stephanie Berez, was in Chicago to meet with Walgreens and, after the meeting, she stopped at a nearby Walgreens store in Wheeling, Illinois to look at the pregnancy test shelf layout, as she typically does when meeting with a retailer that carries First Response products. There, Ms. Berez discovered a large, hanging poster—commonly referred to as a "shelf-talker"—prominently advertising the Weeks Estimator, among other pregnancy tests. *See* Declaration of Stephanie Berez ¶ 2. The advertising was attached to the shelves on which various pregnancy test kits, including Clearblue pregnancy tests, were displayed for sale to consumers. Ms. Berez took a photograph of the advertising. *Id.*, Exh. 1. As the photograph shows, the advertising included: (i) an image of the front panel of the launch package for the Weeks Estimator, which included the word "NEW" prominently displayed on the top of the package; (ii) the statement "✓The first and only pregnancy test that also estimates weeks."; (iii) the statement "✓It's like 2 tests in 1"; and (iv) four gray squares resembling digital screens with the words "Pregnant 1-2 weeks", "Pregnant 2-3 weeks"; "Pregnant 3+ weeks"; "Not Pregnant".

After Ms. Berez brought this to counsel's attention, a Proskauer project assistant visited other Walgreens stores within a 1-mile radius of Proskauer's Chicago office, on March 23 and 24, and found that two of them had shelf-talkers just like the one Ms. Berez found. *See* Declaration of Tiffany Miller ¶¶ 2-4 and Exhs. 1-2 (photographs of the shelf-talkers at the

Chicago stores). Thereafter, on March 26, Proskauer attorney Michael Mervis, who was on vacation near Dillon, Colorado, happened to be at a Walgreens store there and decided to check the pregnancy test aisle. He saw the same shelf-talker that was in the Chicago stores. *See* Declaration of Michael T. Mervis ¶ 2 and Exh. 1 (photographs of the shelf-talker at the Dillon, Colorado store).

Obviously, without an exhaustive, nationwide investigation of the thousands of retail outlets that sell Clearblue pregnancy tests, it would be impossible to know the full extent of continued advertising of the Weeks Estimator. Accordingly, other than the store visits described above and visits to an additional store in Chicago and several in Manhattan, Church & Dwight did not attempt to ascertain how pervasive the advertising remains. It is, however, implausible to believe it only exists in the four stores where it was just seen.

Prompted by this newly-discovered evidence, counsel entered several Google searches that a consumer might perform if she saw one of the shelf-talkers at Walgreens or if she had wondered whether a product like the Weeks Estimator existed. These searches resulted in a display at the top of the Google search results of numerous references touting the innovative features of the Weeks Estimator, and the Weeks Indicator, which C&D understands is the same product being sold under that name outside of the U.S. *See* Declaration of Jeffrey Warshafsky ¶ 2 and Exh. 1. According to Google, such featured snippets are easily disabled with a single line of website code, should an advertiser wish to do so. *Id.*, Exh. 2.

In short, U.S. consumers are still being told that Clearblue—First Response's main competitor—has developed a highly innovative Product. Church & Dwight does not know the full extent to which advertising like that described above (the "New Evidence") is in the marketplace, nor does that matter for the purpose of this motion. Nor does it matter whether

SPD was unaware of the New Evidence, or whether it has done all it can reasonably do to prevent the continued advertising of the Product in U.S. stores and to U.S. consumers on the internet. Once false advertising is disseminated, the genie can never be put back in the bottle. This may be an unavoidable consequence that victims of false advertising must endure. But that only heightens the need to send a forceful message of deterrence to SPD and any company that is likewise prepared to engage in a willful and egregious campaign of lies to the consuming public and to defend that campaign with false testimony in Court. Respectfully, only an award with a truly meaningful multiplier can serve that purpose.

Our purpose is not to suggest that SPD is violating the Court's permanent injunction. Nor do we mean to fault Walgreens, let alone accuse it of wrongdoing. Rather, our point is that incidents like the Walgreens shelf-talkers are the predictable consequence of a campaign of intentionally false advertising. The false advertising here promoting Clearblue as an innovator was enjoined long ago, yet continues to this very day (regardless of the reasons why). The continuing advantage to SPD and the continuing harm to Church & Dwight caused by SPD's false advertising are real, and the New Evidence reflecting this should be included in the trial record as it underscores the need for deterrence in this case beyond disgorging SPD's profits.

"A district court's decision to reopen the proof to allow a party to submit additional evidence is subject to its sound discretion." *Matthew Bender & Co. v. W. Pub. Co.*, 158 F.3d 674, 679 (2d Cir. 1998). "In evaluating a party's motion to reopen the record after the conclusion of a trial, the court must consider (1) whether or not the moving party's failure to submit evidence was the result of its own lack of diligence; (2) the extent to which reopening the record might prejudice the nonmovant; and (3) where the interests of justice lie." *John v. Sotheby's, Inc.*, 858 F. Supp. 1283, 1288 (S.D.N.Y. 1994), *aff'd*, 52 F.3d 312 (2d Cir. 1995).

Each of these factors weighs in favor of admitting the New Evidence as part of the trial record. Church & Dwight only learned about the presence of the shelf-talker in Walgreens stores because a Church & Dwight employee happened to see one during a store visit, and only then did its counsel search for and discover the additional New Evidence. There is no reason SPD would be prejudiced by reopening the record to include the New Evidence, particularly since this is a bench trial. *See* 12 Moore's Federal Practice § 59.13 ("A motion to reopen a bench trial is more likely to be granted than a motion to reopen a jury trial."). Finally, the interests of justice lie in favor of admitting the New Evidence so that the Court's damages award can take into account the fact that the enjoined advertising continues even to this day. *See Caracci v. Brother Int'l Sewing Mach. Corp.*, 222 F. Supp. 769, 771 (E.D. La. 1963) (granting motion to reopen so that the court would "have all of the facts upon which it can render full justice" in awarding damages).

Accordingly, Church & Dwight respectfully requests that the Court reopen the trial record on damages to consider the New Evidence in connection with its assessment of the need for deterrence. Specifically, Church & Dwight respectfully requests that the Court admit the following documents as PTX 690-693, respectively:

- PTX 690: Declaration of Stephanie Berez with Exhibit 1;
- PTX 691: Declaration of Michael T. Mervis with Exhibit 1;
- PTX 692: Declaration of Tiffany Miller with Exhibits 1-2; and
- PTX 693: Declaration of Jeffrey H. Warshafsky with Exhibits 1-2.[1]

Dated: March 30, 2018
New York, NY

By: /s/ Michael T. Mervis
**PROSKAUER ROSE LLP**
Richard M. Goldstein
Michael T. Mervis

[1] If SPD or the Court wishes, Church & Dwight will make these witnesses available for live testimony.

Baldassare Vinti
Jeffrey H. Warshafsky
Eleven Times Square
New York, NY 10036
Tel. (212) 969-3000
Fax (212) 969-2900
rgoldstein@proskauer.com
mmervis@proskauer.com
bvinti@proskauer.com
jwarshafsky@proskauer.com

Attorneys for Plaintiff
Church & Dwight Co., Inc.